14 CV 8549 (PKC)(RLE)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOUGLAS HIGGINBOTHAM,

Plaintiff,

-against-

CITY OF NEW YORK, POLICE OFFICER CURTIS
SYLVESTER, SHIELD 5060, POLICE SERGEANT
CHRISTOPHER TOMLINSON, SHIELD 3686,
POLICE CAPTAIN JOHN DOE

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

***ZACHARY CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel Andrew J. Lucas*
*Tel:  (212) 356-2373*
*Matter No. 2014-039630*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

RULE 12(b)(6) STANDARD FOR DISMISSAL ........................................................................ 3

ARGUMENT ............................................................................................................................. 4

    PROBABLE   CAUSE   EXISTED   FOR   PLAINTIFF'S
    ARREST AND PROSECUTION.                                             4

        Probable Cause Existed for Plaintiff's Arrest under NY PL §
        240.20(6) .......................................................................................................5

        Probable Cause Existed for Plaintiff's Arrest under NY PL §
        240.20(7) .......................................................................................................7

        Probable Cause Existed for Plaintiff's Arrest under NY PL §
        120.20 ...........................................................................................................7

        Probable Cause Existed for Plaintiff's Arrest under NY PL §
        140.25 ...........................................................................................................9

        Plaintiff's   Claim   for   Malicious   Prosecution   Must   be
        Dismissed .....................................................................................................9

        If Probable Cause was Lacking the Officers are Still Entitled
        to Qualified Immunity for Plaintiff's Arrest and Prosecution...................................11

    PLAINTIFF'S   CLAIM   FOR   FIRST   AMENDMENT
    RETALIATION MUST BE DISMISSED.                               12

    PLAINTIFF   FAILS   TO   STATE   A   CLAIM   FOR
    EXCESSIVE FORCE.                                                   14

    PLAINTIFF   FAILS   TO   STATE   A   CLAIM   FOR
    MUNICIPAL LIABILITY.                                 17

CONCLUSION............................................................................................................... 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------x

DOUGLAS HIGGINBOTHAM,

                         Plaintiff,

           -against-

CITY OF NEW YORK, POLICE OFFICER CURTIS
SYLVESTER, SHIELD 5060, POLICE SERGEANT
CHRISTOPHER TOMLINSON, SHIELD 3686, POLICE
CAPTAIN JOHN DOE

                       Defendants.

-------------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

14 CV 8549 (PKC)(RLE)

        Defendants City of New York, Curtis Sylvester and Christopher Tomlinson, by their attorney Zachary Carter, Corporation Counsel of the City of New York, hereby submit this Memorandum of Law in support of their motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

        Plaintiff Douglas Higginbotham brings this action pursuant to 42 U.S.C. § 1983 against defendants City of New York, Curtis Sylvester and Christopher Tomlinson, ("defendants") alleging that he was deprived of his Constitutional rights on or about November 15, 2011.  See Complaint, annexed to the Declaration of Andrew Lucas dated February 23, 2015, as exhibit "A".

        Defendants now move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that: (1) probable cause existed for the arrest and prosecution of plaintiff, and qualified immunity precludes any liability; (2) plaintiff fails to plead a cause of action for First Amendment retaliation; (3) plaintiff fails to plead a cause of action for excessive

force; and (4) plaintiff fails to allege a pattern or practice that could give rise to municipal liability.

## STATEMENT OF FACTS

On November 15, 2011, at 10:45 a.m. plaintiff was working as a freelance journalist for TV New Zealand, videotaping Occupy Wall Street activity near Zuccotti Park.  See Plaintiff's Complaint annexed as Exhibit A, ¶ 9.  During the protest plaintiff climbed on top of a phone booth to get a higher vantage point to film while it was surrounded by a crowd of people. Id., ¶¶ 10, 12.  Plaintiff was ordered down from the booth by police, but could not immediately comply because of the number of people around the telephone booth.  Id., ¶¶ 11-12.

When plaintiff, a grown man, chose to climb on top of a telephone booth to record video, he was standing approximately 12 feet above the ground.  He carried a professional video camera on his shoulder, also high above the ground.  The telephone booth did not have steps inviting plaintiff to climb and the top was not a stage, but plaintiff scaled it to get a better vantage point to record from.  He needed a higher vantage point, in part, because the area was crowded.  Plaintiff placed himself and his camera, with every sharp corner and their full weight, at least a body length above the heads of the crowd.  Plaintiff concedes that he could not immediately comply with a police order to get down because the crowd was so dense.  Id., ¶ 12. Probable cause existed for plaintiff's arrest because he put himself and his equipment high above a crowd sufficiently think to prevent him from getting down safely; scaled private property that is designed to repel rain and sun, not hold a man; and defied police orders, albeit briefly, to get off of the phone booth.

Once plaintiff was off of the phone booth defendants restrained his hands with plastic handcuffs and transported him to the 1st Precinct.  Id., ¶¶ 13-15.  After three hours officers removed plaintiff's handcuffs, leaving his wrists bruised and in pain.  Id. ¶ 15.  Plaintiff was

charged with a violation of NY PL 240.20 and released after approximately four hours in custody. Id. ¶ 17. Plaintiff's charges were dismissed on February 17, 2012.

## RULE 12(B)(6) STANDARD FOR DISMISSAL

In deciding a motion for judgment on the pleadings pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "accept[s] the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." King v. Am. Airlines, Inc., 284 F.3d 352 (2d Cir. 2002) (quoting Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999)).

A complaint may be dismissed pursuant to Rule 12(b)(6) where it fails to plead "enough facts to state a claim to relief that is plausible on its face." See Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1975 (2007). In order to state a claim, the factual allegations contained in the pleading "must be enough to raise a right to relief above the speculative level." See Twombly, 127 S. Ct. at 1965; see also In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) ("While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'"). A complaint satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Evaluating the sufficiency of a complaint is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." See id. at 1950. The Court may and should disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. at 1949. After examining the remaining factual matter, if "the well-pleaded facts do not permit the court to infer more than the mere possibility

of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See id. at 1950 (quoting Fed. R. Civ. P. 8(a)).

For the reasons set forth herein, plaintiff's claims for false arrest, malicious prosecution, First Amendment retaliation, excessive force and assault, and under Monell should be dismissed with prejudice.

### ARGUMENT

### PROBABLE CAUSE EXISTED FOR
### PLAINTIFF'S ARREST AND PROSECUTION.

Plaintiff's claim for false arrest fails as probable cause existed for his arrest and prosecution. The existence of probable cause to arrest constitutes justification and is a complete defense. Hyde v. Caputo, 2001 U.S. Dist. Lexis 6253, * (E.D.N.Y. 2001); *citing* Covington v. City of New York, 171 F.3d 117, 112 (2d Cir. 1999). "There can be no federal civil rights claim for false arrest where the arresting officer had probable cause. Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton County, 63 F.3d 110, 118 (2d Cir. 1995)(internal quotations omitted); *citing* Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993).

Where there is probable cause to arrest for any offense a false arrest claim is subject to dismissal. Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012); *citing* Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006); *see also* Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004); Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) ("[A]n arrest is not unlawful so long as the officer has knowledge of, or reasonably trustworthy information as to,

facts and circumstances sufficient to provide probable cause to believe that the person arrested has committed any crime.").

"Probable cause exists where the facts and circumstances within the officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been, or is being committed by the person to be arrested." Dunaway v. New York, 442 U.S. 200, 208 (S. Ct. 1979).

Probable cause is an objective test, and any alleged alternative motives by defendants are irrelevant. "[M]otivation is not a consideration in assessing probable cause." Singer, 63 F.3d 118. "[W]e refuse to examine the motivation behind the decision by the sergeant to seek an arrest warrant." Mozzochi v. Borden, 959 F.2d 1174, 1179 (2d Cir. 1992); Whren v. United States, 517 U.S. 806, 812-13 (1996).

As outlined above, if probable cause existed for any offense, whether charged or not, plaintiff cannot state a constitutional claim stemming from that arrest. Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012); *citing* Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006); *see also* Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004); Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007). In this case plaintiff could be properly arrested for several offenses based solely upon his pleadings. These include NY PL § 240.20 (6) and (7), disorderly conduct, NY PL § 120.20, reckless endangerment, and NY PL § 140.25, reckless endangerment of property.

### Probable Cause Existed for Plaintiff's Arrest under NY PL § 240.20(6)

NY PL § 240.20(6) makes it a violation when "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof [he] congregates with other persons in a public place and refuses to comply with a lawful order of the police to

disperse."   Plaintiff's complaint alleges that officers ordered him to climb down from the telephone booth, and he "was unable to immediately comply with that order."   See Exhibit A, ¶ 12.   Under a plain reading of NY PL § 240.20(6) and the complaint, plaintiff, above a crowd of people was ordered to climb down from a phone booth and could not comply, creating probable cause to arrest him for a violation of § 240.20(6).

In analyzing the mens rea requirement "Penal Law § 240.20 does not require proof that any member of the public actually was inconvenienced, annoyed or alarmed, it is enough that a substantial unjustifiable risk thereof was created. The issue is solely the objective standard of public disturbance, whether a reasonable person, under the circumstances, would not tolerate the conduct. It is an annoyance of a neighborhood or the public, or the risk thereof, that must be shown." People v. O'Leary, 153 Misc. 2d 641, 656 (N.Y. City Ct. 1992)(quotations omitted).   There can be no dispute that the order by the police was proper.   "[u]nder New York's disorderly conduct statute, an order to disperse is lawful unless the order was purely arbitrary and not calculated in any way to promote the public order."   U.S. v. Nelson, 500 Fed. Appx. 90, 93 (2d Cir. 2012) (quotations omitted).

Plaintiff had stood high above a crowded sidewalk carrying camera equipment on his shoulder placing himself and the people around the phone booth in danger, not to mention the phone booth itself.   Plaintiff's actions recklessly created a risk of at least public inconvenience to everyone around him, whether from something as mundane as a damaged phone booth to something as unfortunate as a head injury from a falling person.   The officer's order was not arbitrary, and when plaintiff could not comply with that order there was probable cause to arrest him under NY PL § 240.20(6).

**Probable Cause Existed for Plaintiff's Arrest under NY PL § 240.20(7)**

Similarly, probable cause existed to arrest plaintiff under NY PL § 240.20(7).  NY PL § 240.20(7) prohibits conduct when "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof [h]e creates a hazardous or physically offensive condition by any act which serves no legitimate purpose."

NY PL § 240.20(7) applies here as plaintiff recklessly created a risk of injury to those around the phone booth when he climbed it and used it as a platform.  The statute embraces a wide variety of behavior.  This ranges from climbing and jumping off of a fence when people may be below you, People v Om, 2013 N.Y. Misc. LEXIS 6419 (N.Y. City Ct. Dec. 23, 2013), to public urination, Taylor v. Sheltered Workshop for the Disabled, Inc., 2009 U.S. Dist. LEXIS 99880 (N.D.N.Y Oct. 27, 2009).

The press serves a valuable end in society, and Plaintiff alleges at the time of his arrest he was filming as a member of the press.  While that may be a legitimate purpose, climbing above a large crowd for a better vantage point strays well outside of legitimate.  In People v. Millhollen, 5 Misc. 3d 810 (N.Y. City Ct. 2004), the court considered a charge of § 240.20(7) for climbing a tree to protest it being cut down.  The court took particular note that the only individual in danger was the arrestee herself.  5 Misc. 3d 817.  Here, plaintiff placed numerous people in danger from climbing above them.  And while journalism writ large may be legitimate, it does not legitimate scaling public appurtenances to get a different angle and place people in jeopardy.  Accordingly, probable cause exists for the arrest of plaintiff under NY PL § 240.20(7).

**Probable Cause Existed for Plaintiff's Arrest under NY PL § 120.20**

NY PL § 120.20 states "A person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury

to another person."   Plaintiff was in violation of this straightforward criminal section and probable cause existed for his arrest.   By getting him down from the phone booth officers prevented plaintiff, whose focus was on an incident some distance away, from losing a hold of his equipment and dropping it on those below him, losing his footing and falling on those below him, or caving in the phone booth and bringing it, his equipment, and himself down on those below him.

Plaintiff may attempt to argue that because no one was injured, this section cannot apply, however "[t]he Penal Law is replete with provisions criminalizing risk-creating conduct. (See e.g. Penal Law §§ []120.25 [reckless endangerment]; § 145.25 [reckless endangerment of property]." People v. Cintron, 13 Misc. 3d 833, 851-852 (N.Y. Sup. Ct. 2006).  Plaintiff, by all evidence a grown adult, climbed an object not designed to support a person, held professional grade video equipment up above the crowd and remained there until ordered down.   While arguments can be made about what harm may have befallen anyone who had a camera, or plaintiff himself, dropped on their heads from that height, what is clear is that the injury could have been severe.

The threshold for a finding of probable cause in this regard is low, and the injury can remain speculative as the law criminalizes the risk taking itself.  "At a minimum, respondent's act of discharging fireworks into traffic gave Officer Geary probable cause to arrest the respondent on A misdemeanor charges of reckless endangerment in the second degree (Penal Law § 120.20) since his act created a substantial risk of serious physical injury to all the officers in the police van as well as to any pedestrians."  In re William H., 177 Misc. 2d 196, 198 (N.Y. Fam. Ct. 1998).  In that case the fireworks did explode, the van safely stopped, and the Court required no evidence that injury 'almost' happened.  The risk taking conduct itself, as here,

provided probable cause for plaintiff's arrest.  See Also People v King, 141 App Div 2d 563 (2d Dept. 1988) (opening car door into bicycle causing crash into a pedestrian supports charge of NY PL § 120.20).

### Probable Cause Existed for Plaintiff's Arrest under NY PL § 140.25

Under NY PL § 140.25 "[a] person is guilty of reckless endangerment of property when he recklessly engages in conduct which creates a substantial risk of damage to the property of another person in an amount exceeding two hundred fifty dollars."

As above, this section speaks for itself.  The phone booth was not built as a platform, it had no ladder or stairs to entice people to get on top of it.  There is no indication that the roof of the phone booth was built to hold an adult.  Plaintiff had to climb there, and regardless of whether any damage occurred it is clear that he recklessly misused the phone booth, private property, in a way that could have caused significant damage.  Probable cause existed and plaintiff's arrest was justified under NY PL § 140.25.

### Plaintiff's Claim for Malicious Prosecution Must be Dismissed

In Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002), the Second Circuit discussed malicious prosecution in federal actions:

> In order to prevail on a § 1983 claim against a state actor for malicious prosecution, plaintiff must show a violation of his rights under the Fourth Amendment, see, e.g., Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997), cert. denied, 118 S. Ct. 1051 (1998), and establish the elements of a malicious prosecution claim under state law, see, e.g., Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995); Janetka v. Dabe, 892 F.2d 187, 189 (2d Cir. 1989). To establish a malicious prosecution claim under New York law, a plaintiff must show that a proceeding was commenced or continued against him, with malice and without probable cause, and was terminated in his favor. See, e.g., id.; Murphy v. Lynn, 118 F.3d at 947; Broughton v. State, 37 N.Y.2d 451, 457 (1975); cert. denied, 423 U.S. 929 (1975).

"If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact." Johnson v. Constantellis, 221 Fed. Appx. 48, 50 (2d Cir. 2007).

With respect to his malicious prosecution allegations Plaintiff states that the officers initiated and pursued a criminal charge where there was no basis for such charge. Exhibit A, ¶ 25. He also alleges that the disorderly conduct charge against him was false. Exhibit A, ¶ 17. He finally states that all charges against him were dismissed on February 17, 2012, but without identifying any court dates, arraignments, or details of that dismissal. Without more, plaintiff fails to state a claim. A complaint satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

At the outset, should the Court find that probable cause existed for plaintiff's arrest under § 240.20(6) there can be no claim for malicious prosecution. Johnson, 221 Fed. Appx. 50. Without any details about arraignment, let alone dismissal, Plaintiff's claim is insufficiently pled. Plaintiff fails to outline a seizure sufficient to constitute a Fourth Amendment violation. A single court appearance from a summons or desk appearance ticket does not to rise to the level of a Constitutional deprivation. "The proceedings against Faruki placed no restriction on her other than a requirement that she appear in court on two occasions— an insufficient deprivation of liberty to support a Fourth Amendment malicious prosecution claim." Faruki v. City of New York, 517 Fed. Appx. 1, 2 (2d Cir. 2013) (citing Burg v. Gosselin, 591 F.3d 95, 101 (2d Cir. 2010) ("[A] pre-arraignment, non-felony summons requiring no more than a later court appearance does not constitute a Fourth Amendment seizure.")).

Additionally, plaintiff fails to allege malice.  While plaintiff may contest his charges, there are no allegations that the officers made any factual misrepresentations or pressed the case against him.  To the extent his allegation of malice is that he does not believe he violated the disorderly conduct statute it is a legal dispute, not malice.  Finally, as considered below, even if probable cause was lacking, the officers are entitled to qualified immunity as reasonable officers could disagree about the existence of probable cause.  Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007).

### If Probable Cause was Lacking the Officers are Still Entitled to Qualified Immunity for Plaintiff's Arrest and Prosecution

Even if probable cause was lacking, plaintiff's claims must be dismissed as the defendants are entitled to qualified immunity.  A police officer is entitled to qualified immunity for a claim of arrest without probable cause if: (1) it was objectively reasonable for the officer to believe that probable cause existed; or (2) officers of reasonable competence could disagree on whether there was probable cause.  Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) (citations omitted).  "An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances."  Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995).

The Supreme Court has noted "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The facts in this case are substantially not in dispute.  Plaintiff climbed above a crowd and could have fallen or dropped his equipment, which fortunately did not happen.  What he climbed on was not meant to support people, and he was filming an incident some distance

away, not focused on maintaining his footing.  Officers ordered him down, but he was unable to comply because there were too many people below him.  The officers in this case were patently reasonable and to the extent the Court does not find probable cause they must be entitled to qualified immunity.  Plaintiff's actions were careless towards his own safety and reckless to the safety of those around him.  In ordering him down from above the crowd the officers were objectively reasonable and patently not incompetent.  This is equally true of plaintiff's arrest and the decision to issue him a summons, and qualified immunity must attach.

### PLAINTIFF'S CLAIM FOR FIRST AMENDMENT RETALIATION MUST BE DISMISSED.

In order to state a claim for First Amendment retaliation, plaintiff must establish "1) he has an interest protected by the First Amendment; 2) defendants' actions were motivated or substantially caused by his exercise of that right; and 3) defendants' actions effectively chilled the exercise of his First Amendment right."  Kuck v. Danaher, 600 F.3d 159, 168, (2d Cir. 2010); Santulli v. Russelo, 2013 U.S. App. LEXIS 5285, *3-4 (2d Cir. 2013).

Plaintiff's First Amendment retaliation claim fails as probable cause existed for his arrest; qualified immunity shields the actions of the officers; he does not allege that the actions of the officers were caused by his exercise of his First Amendment rights, and he cannot allege that he defendants' chilled the exercise of his First Amendment rights.

Probable cause is a complete defense to a claim of First Amendment retaliation. "Fabrikant's claims of malicious prosecution, unreasonable search and seizure,  and First Amendment retaliation fail because defendants had probable cause…" Fabrikant v. French, 691 F.3d 193, 215-216 (2d Cir. 2012).

Here, as outlined above probable cause and qualified immunity render plaintiff's arrest proper, and preclude liability for First Amendment retaliation.

Plaintiff also cannot satisfy the second and third requirement of a retaliation claim.  Plaintiff does not allege that his arrest was motivated by his actions as a journalist.  The closest allegation plaintiff sets forth in that regard is that the actions of the officers "caused damage to [his] camera and prevented him from continuing to videotape the protest and police response."  Exhibit A, ¶ 34.  For the purpose of the motion defendants accept as true that his camera was damaged in the course of his arrest, however, even given this claim, plaintiff has failed to plead that his actions as a journalist motivated the arrest.  He cannot plausibly do so now for two reasons: he is aware that the reason the police arrested him is because he climbed on top of a telephone booth, not because he had a camera; and there were scores of individuals with cameras, video cameras, tablets, laptops, etc., they were not arrested alongside him.  These facts make any claim to the contrary implausible.

Finally, plaintiff's First Amendment retaliation claim fails because he does not allege that Defendants chilled his rights. "To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her Constitutional rights--in other words, there is an injury requirement to state the claim." Williams v. Town of Greenburgh, 535 F.3d 71, 78 (2d Cir. N.Y. 2008) (Citing Colombo v. O'Connell, 310 F.3d 115, 117 (2d Cir. 2002)).  Here, plaintiff's damaged camera, and some loss of employment, is the closest he comes to alleging a chill of his First Amendment rights.  He makes no claim that he was deterred from reporting on protests or events anywhere in the City, only that his camera was damaged and he had difficulty getting hired.  While that may speak to lost wages or employment, it is not a chill of First Amendment rights, only revenue.

**PLAINTIFF FAILS TO STATE A CLAIM FOR
<u>EXCESSIVE FORCE.</u>**

Plaintiff brings a claim for excessive force in placing him under arrest.  Exhibit A,

¶ 28.  Plaintiff specifically alleges that he was placed in "plastic flexible handcuffs and walked

from the scene" of his arrest.  Id. ¶ 14.  Officers ultimately cut those handcuffs off with a bread-

knife approximately three hours later resulting in bruising and pain to his wrists.  Id. ¶ 15.  He

makes no allegations of permanent injury, no allegations of seeking medical treatment, no

allegations that the pain or bruising remained for any significant period of time, and no allegation

that the handcuffs were too tight, or that he requested they be loosened.[1]

When an "excessive force claim arises in the context of an arrest or investigatory

stop of a free citizen, it is most properly characterized as one invoking the protections of the

Fourth Amendment . . . ."  <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989).  The Courts have

consistently held "that the right to make an arrest or investigatory stop necessarily carries with it

the right to use some degree of physical coercion or threat thereof . . . ."  <u>Graham</u>, 490 U.S. at

396 (citations omitted).  Thus, "[d]etermining whether the force used to effect a particular

seizure is 'reasonable' . . . requires a careful balancing of 'the nature and quality of the intrusion

on the individual's Fourth Amendment interests against the countervailing governmental

interests at stake."  <u>Graham</u>, 490 U.S. at 396 (citations omitted).

A plaintiff must establish "through evidence, that the 'alleged use of force is

objectively sufficiently serious or harmful enough to be actionable.'"  <u>Rincon v. City of New

York</u>, No. 03 Civ. 8276, 2005 U.S. Dist. LEXIS 4335, at *11 (S.D.N.Y. Mar. 21, 2005); *citing*

---

[1] Plaintiff pleads a claim for § 1983 Assault.  That claim should be dismissed as duplicative of his claim for
excessive force.  <u>See</u>  <u>Richardson v. City of New York</u>, 11 cv 2320 (LGS) (S.D.N.Y. Dec. 10, 2013), 2013 U.S.
Dist. LEXIS 175269, fn 1 ("Plaintiff attempts to assert a federal claim for assault and battery under the Fourth
Amendment. This claim, however, is better viewed as a Fourth Amendment excessive force claim. See <u>Graham v.
City of New York</u>, 928 F. Supp. 2d 610, 625 (E.D.N.Y. 2013) ("Federal excessive force claims and state law assault
and battery claims against police officers are nearly identical."))

United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999)).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  Graham v. Connor, 490 U.S. 397; *citing* Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Accordingly, "a *de minimis* use of force will rarely suffice to state a Constitutional claim."  Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).  "'[T]he extent of injury may . . . provide some indication of the amount of force applied.'"  Alford v. City of New York, No. 11-CV-0622 (ERK), 2012 U.S. Dist. LEXIS 123137, at *9-11 (E.D.N.Y. Aug. 29, 2012); *citing* Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010)).

Painful handcuffing does not amount to a constitutional violation as a matter of law.  Schy v. Vermont, 2 Fed. Appx. 101, 102 (2d Cir. 2001) (Affirming dismissal, noting lack of injury and a failure to request assistance); Beckles v. City of New York, No. 11-1226-cv, 2012 U.S. App. LEXIS 17433, at *5, (2d Cir. Aug. 20, 2012) "'Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective[,] handcuffs must be tight enough to prevent the arrestee's hands from slipping out.'"  Grant v. City of New York, 500 F. Supp. 2d 211, 217 (S.D.N.Y. 2007) (quoting Esmont v. City of New York, 371 F. Supp. 2d 202, 214 (E.D.N.Y.2005)).

As a matter of law, an "allegation of sore, yet uninjured, wrists [as a result of handcuffing] simply does not rise to the level of objective excess that reasonable police officers would consider to be unlawful conduct in an arrest situation."  Wilder v. City of Amityville, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003).  Even a showing of minor injuries from handcuffs is "insufficient to constitute a Fourth Amendment claim of unreasonable force."  Stefanopoulos v.

City of New York, 01 Civ. 0771 (SJ), 2005 U.S. Dist. LEXIS 22445, at *3 (E.D.N.Y. Feb. 28, 2005).

Here plaintiff does not state a claim for excessive force as he details no injury, no complaints to the defendant officers, and describes only minimal, necessary force used during his arrest.  As a matter of law he failed to state a claim.  See Roundtree v. New York, 778 F. Supp. 614, 622 (E.D.N.Y. 1991) ("to conclude that a 'push' that does not cause the slightest of physical injuries to the plaintiff is nonetheless an actionable use of excessive force would be to hold that any physical contact by an arresting officer with the arrested person is actionable."); Nogbou v. Mayrose, No. 07 Civ. 3763 (RWS), 2009 U.S. Dist. LEXIS 96118, at *15-19 (S.D.N.Y. Oct. 15, 2009), aff'd, 400 Fed. Appx. 617, 619 (2d Cir. 2010); Wims v. New York City Police Dep't, et al., No. 10 Civ. 06128 (PKC), 2011 U.S. Dist. LEXIS 78641, at *14-15 (S.D.N.Y. July 20, 2011); Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).  Plaintiff's handcuffs had to be tight enough to be useful, but caused no injury, garnered no complaints from plaintiff before they were removed, and required no treatment.

Finally defendants are still shielded by qualified immunity for the application of handcuffs and minimal force in placing plaintiff under arrest to the extent those actions were not objectively unreasonable.  "An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances."  Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995).  Accordingly plaintiff's claims for excessive force must be dismissed with prejudice as the force used was reasonable under the circumstances.

**PLAINTIFF FAILS TO STATE A CLAIM FOR
MUNICIPAL LIABILITY.**

While municipalities may be sued under 42 U.S.C. § 1983, they are not liable under the theory of *respondeat superior*.  The Supreme Court held in <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658 (1978) that

> The language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.

It is also well recognized that a municipal policy cannot be inferred from a single incident of an alleged deprivation of an individual's civil rights.  <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 (1985).   To hold a municipality liable under § 1983 for the allegedly unconstitutional acts of its employees, Plaintiff must prove (1) that the alleged actions by the employees were the result of a specific official policy, custom, or practice of the municipal defendant; (2) that this policy, practice, or custom caused plaintiff's alleged injuries; and (3) that those alleged injuries constituted a violation of plaintiff's constitutional rights.  <u>Monell</u>, supra, 436 U.S. 658, 691-694; <u>Bosone v. County of Suffolk</u>, 274 A.D.2d 532, 534 (2nd Dept. 2000).

"The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."  <u>Bradley v. City of New York</u>, No. 08 Civ. 1106 (NGG), 2009 U.S. Dist. LEXIS 51532, at *8-*9 (E.D.N.Y. June 18, 2009) (*citing* <u>Dwares v. City of New York</u>, 985 F.2d 94, 100 (2d Cir. 1993)).  Thus, plaintiff's claim should be dismissed where he merely states conclusory allegations of municipal policy and practice and fails to allege facts from which the court may

- 17 -

infer an actual causal link between the custom or policy and alleged constitutional violation.  See e.g., Cuevas v. City of New York, 07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984, at *12 (S.D.N.Y. Dec. 7, 2009).  Nor can the alleged events of that single day be used to infer or bootstrap an allegation of a broader municipal policy.  Oklahoma City, supra, 417 U.S. at 824. Critically here, where there is no underlying constitutional violation, there can be no liability pursuant to Monell.  City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

Plaintiff presents two competing theories in an attempt to navigate a Monell claim.  Plaintiffs argue in Exhibit A, ¶ 38, that defendants had a policy of mass arrests without probable cause, and with excessive force.  Plaintiff makes no reference to a mass arrest at the time of his arrest rendering this theory incongruous and implausible.  Plaintiff also fails to present any specific examples of mass arrests or force, let alone any related to his claims.  For these reasons, and because he has no claim related to his arrest or force, this theory must be dismissed.

Plaintiff points, in ¶ 39-42 to a second theory, that defendants had a policy of intentionally impeding and arresting individuals recording the police.  Plaintiff alludes specifically to the arrest of 44 journalists over 15 incidents over an undefined period of time. Exhibit A, ¶ 39.  Plaintiff attempts to bolster this claim with two statements that speak to the precise opposite conclusion: that both the Mayor and Police Commissioner worked to ensure that the media was able to safely do their job in difficult protest situations.  Exhibit A, ¶¶ 41, 42.

"The breadth with which plaintiff[] define[s] the alleged policy underscores its implausibility… The plaintiff[] cannot bridge the gap between the broad, conspiratorial policy [he] attribute[s] to the City and the violations that [he has] plausibly alleged in this case." Garcia v. Bloomberg, 865 F. Supp. 2d 478, 492 (S.D.N.Y. 2012).  Here, assuming that 44 journalists

were arrested over 15 protests over the course of a protest movement spanning well over a year, this does not indicate a policy of targeting individuals recording the police, particularly during a period that involved significantly more arrests for unlawful conduct.  Nearly every individual with a cellphone had the ability to record police activity, and the vast majority of individuals at protests had at least a cellphone available to record.  That number of unmolested individuals engaged in the conduct Plaintiff claims would make them a target dwarfs the 44 arrestees plaintiff relies on here, as well as the overall number of protestors arrested.

Plaintiff's claim for municipal liability fails because he did not suffer any Constitutional violation.  However, even assuming he did suffer some violation, there is no causal link between his arrest for climbing a phone booth and his conclusory theory of municipal liability.  Finally, on its face Plaintiff's theory of municipal liability is implausible, overbroad, and insufficiently supported to maintain his sweeping claim.  Plaintiff's alleged policy, that individuals recording police activity were arrested, would require untold thousands more were arrested, as nearly every cell phone user should have fallen under that dragnet, let alone every citizen journalist, photographer, livestreamer, and professional journalist.  Instead he can point to the arrest of only 44 individuals over a long protest movement that operated for over a year.

## CONCLUSION

For the foregoing reasons, defendants The City of New York, Curtis Sylvester and Christopher Tomlinson, respectfully request that the Court dismiss plaintiff's complaint with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated:        New York, New York
              February 23, 2015

                              ZACHARY CARTER
                              Corporation Counsel of the City of New York
                              *Attorney for Defendants City of New York,*
                              *Sylvester, Tomlinson*
                              100 Church Street
                              New York, New York 10007
                              (212) 356-2373


                       By: _____/s/_____ __
                              Andrew Lucas
                              Assistant Corporation Counsel
                              Special Federal Litigation Division