UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DOUGLAS J. HIGGINBOTHAM,

                Plaintiff,

- against -

                                            14 CV 8549 (PKC) (RLE)

CITY OF NEW YORK, POLICE OFFICER CURTIS
SYLVESTER, SHIELD 5060, POLICE SERGEANT
CHRISTOPHE TOMLINSON, SHIELD 3686,
POLICE CAPTAIN JOHN DOE,

                Defendants.
------------------------------------------------------------------X

# MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANTS'
# MOTION TO DISMISS

                                            Jay K. Goldberg
                                            Attorney for Plaintiff
                                            Goldberg & Allen, LLP
                                            49 W. 37th Street, 7th Fl.
                                            New York, New York 10018
                                            212-766-3366

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 1

ARGUMENT ............................................................................................................. 2

    I. APPLICABLE STANDARD OF REVIEW ..................................................... 2

    II. THERE WAS NO PROBABLE CAUSE FOR PLAINTIFF'S ARREST ........ 3

        A. There Was No Probable Cause for an Arrest For PL §240.20(6) ............... 3

        B. There Was No Probable Cause For An Arrest For PL §240.20(7) ............. 4

        C. There Was No Probable Cause For An Arrest For PL §120.20 .................. 6

        D. There Was No Probable Cause For An Arrest For PL §140.25 .................. 8

    III. THE CLAIM FOR MALICIOUS PROSECUTION IS PROPERLY PLED .... 8

    IV. THE OFFICER DEFENDANTS ARE NOT ENTITLED TO
         QUALIFIED IMMUNITY ............................................................................. 10

    V. PLAINTIFF PROPERLY PLED A CLAIM FOR A
        FIRST AMENDMENT VIOLATION ............................................................ 11

    VI. PLAINTIFF PROPERLY PLED A CLAIM FOR EXCESSIVE FORCE ........ 11

    VII. PLAINTIFF PROPERLY PLED A CLAIM FOR
         MUNICIPAL LIABILITY ............................................................................. 13

CONCLUSION ......................................................................................................... 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DOUGLAS J. HIGGINBOTHAM,

                       Plaintiff,                **MEMORANDUM OF LAW
IN OPPOSITION TO
DEFENDANTS'
MOTION TO DISMISS**

     - against -

                                               14 CV 8549 (PKC) (RLE)

CITY OF NEW YORK, POLICE OFFICER CURTIS
SYLVESTER, SHIELD 5060, POLICE SERGEANT
CHRISTOPHE TOMLINSON, SHIELD 3686,
POLICE CAPTAIN JOHN DOE,

                       Defendants.
------------------------------------------------------------------X

     Plaintiff, Douglas Higginbotham, by his attorney, Jay K. Goldberg, Goldberg & Allen, LLP, hereby submits this Memorandum of Law in opposition to the Defendants' motion to dismiss the complaint pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure.

### PRELIMINARY STATEMENT

     Plaintiff brings this case pursuant to 42 U.S.C. §1983 based on the deprivation of his Constitutional rights by the above captioned defendants. The Complaint before the Court states six claims, each of which Defendants now move to dismiss. Because the Motion to Dismiss: (1) relies upon facts outside the Complaint; (2) draws impermissible inferences from the facts alleged; (3) misinterprets the statutory elements of the New York Penal Law; and, (4) fails to give a fair reading to the facts alleged, the motion must be denied in all respects.

### STATEMENT OF FACTS

     The facts in the Complaint are, for the most part, summarized in the moving papers and will be discussed below in connection with the specific arguments. Of more direct interest at this juncture is Defendants' reliance on purported facts that are not alleged in the Complaint. Thus, in

the second paragraph of the Statement of Facts, Defendants allege the following facts found nowhere in the Complaint: (1) that when Plaintiff was atop the phone booth he was "approximately 12 feet above the ground;" (2) that Plaintiff's camera had "sharp corner(s);" (3) that the crowd around the phone booth was "sufficiently [thick] to prevent him from getting down safely;" and, of greatest import to their arguments, (4) that the phone booth was not designed to hold the weight of a man (Deft. Mem., p. 2).

As this Court made clear in its February 9, 2015 Order, "a Rule 12(b)(6) motion accepts the allegations of the complaint as true" and "the Court will not convert the motion to a motion for summary judgment." Therefore, all of the allegations of fact outside the Complaint are improperly included in the motion and should be summarily rejected by this Court.

## ARGUMENT

### I.   Applicable Standard of Review

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the reviewing court must accept as true all factual allegations within the complaint and must draw all reasonable inferences in favor of the plaintiff. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007); *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006); *Courtnay Communications Corp. v. Hall*, 334 F.3d 210, 213 (2d Cir. 2003). In order to survive the motion, the complaint must plead facts sufficient to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At this stage, the issue is not whether the plaintiff will ultimately prevail on his claims, but only whether he is entitled to offer evidence to support the claims. *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).

## II. There Was No Probable Cause For Plaintiff's Arrest

It is beyond dispute that the existence of probable cause is a complete defense to an action for false arrest and malicious prosecution. *Ricciuti v. N.Y. City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 113 (2d Cir. 1995). To demonstrate the existence of probable cause, the facts as alleged in the Complaint – without the consideration of any additional facts – must establish a reasonable belief that the person arrested committed an offense. *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) Moreover, even if probable cause for the actual arrest charge did not exist, the existence of probable cause for any offense, whether charged or not, precludes the action for false arrest or malicious prosecution. *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).

Review of the charge for which Plaintiff was arrested, as well as the other possible charges posited by Defendants, fail to support the assertion that there was probable cause for an arrest.

### A. There Was No Probable Cause For An Arrest For PL §240.20(6)

Plaintiff was arrested and charged with Disorderly Conduct, PL §240.20(6). As with all subsections of disorderly conduct, a defendant must act with the intent to cause public annoyance, inconvenience or alarm or recklessly create a risk thereof. The disorderly conduct statute was designed to proscribe only that type of conduct which has a real tendency to provoke public disorder (Donnino, Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 39, Penal Law § 240.20, at 347). The specific subsection under which Plaintiff was charged requires that a defendant: (1) congregate with other persons in a public place and (2) refuse to comply with a lawful order to disperse. PL §240.20(6).

As pled in the Complaint, Plaintiff was at the scene of an Occupy Wall Street ("OWS") protest as a working journalist covering the event for TV New Zealand (Complaint, ¶ 9). As such, Plaintiff was not congregating *with* the other persons; he was obviously separate and apart from those he was covering. *See, People v. Munafo*, 50 N.Y.2d 326, 332 (1980) (liability requires defendant be part of congregated crowd); *People v. Sharkey*, 57 Misc.2d 558 (Nass. Co. 1968) (where no evidence that defendant was member of congregating group, he could not be guilty of PL §240.20(6)). Moreover, as pled in the Complaint, Plaintiff did not refuse to comply with the order to come down from the phone booth; he simply could not immediately do so (Complaint, ¶ 12). Indeed, in their Memorandum, Defendants acknowledge that there was no refusal to comply. Thus, Defendants state that " Under a plain reading of ... the complaint, plaintiff .... was ordered to climb down from a phone booth and *could not comply* ..." (Def. Mem., p. 6; emphasis supplied). There is a significant qualitative distinction between "could not comply" and a refusal to do so. Indeed, the only reasonable inference from the Complaint is that Plaintiff sought to comply, tried to do so, but was momentarily prevented from climbing down because of the crowd (Complaint, ¶¶ 12 and 13).

Therefore, because neither element of the statute was supported by the objective facts, there was neither probable cause nor any reasonable view of the facts which would support a violation of PL §240.20(6).

### B. There Was No Probable Cause For An Arrest For PL §240.20(7)

Because there was no probable cause under the section charged , Defendants posit PL §240.20(7) as a possible basis for an arrest. This subsection requires that a person: (1) create a hazardous or physically offensive condition (2) by an act that serves no legitimate purpose.

In the first instance, Defendants concede that the "press serves a valuable end in society". (Def. Mem., p. 7). As such, it must be conceded, as alleged in the Complaint at paragraphs 9 through 11, that Plaintiff's actions as a journalist served a legitimate purpose. Therefore, because the second element of the statute cannot be met, probable cause could not exist for an arrest under PL §240.20(7).

Oddly, Defendant's cite *People v. Millhollen*, 5 Misc.3d 810 (City Ct. Ithaca 2004) in support of their position. The *Millhollen* court considered the application of this statute to a defendant who climbed a tree to prevent it from being cut down. The court noted that such protest "cannot be classified as an action without legitimate purpose" and granted the defendant's motion to dismiss. *Id.* at 817. A working journalist exercising the First Amendment right of freedom of the press is an equally legitimate purpose.

Nor is there anything in the Complaint from which an inference could be drawn that other people were placed in jeopardy by virtue of a hazardous condition. There is nothing to suggest that while atop the telephone booth Plaintiff was in danger of losing his balance or falling from the platform upon which he stood. Indeed, the reasonable inference is the opposite. Thus, Plaintiff's goal was to secure a better vantage point for filming the protest. This could hardly be accomplished from a location that did not provide stability. Because the condition created by Plaintiff was not hazardous, the first element of the offense cannot be substantiated.

Defendants' reliance on *People v. Om*, 42 Misc.3d 1215 (A) (City Court Rye 2013) is misplaced. First, contrary to Defendants' summary, the case did not involve a person who jumped off a fence when people "may" have been below him. Instead, the defendant in *Om* jumped off a fence into the waters of Long Island Sound creating a hazard to boaters in the area.

Id. at *4. Thus, it was not a theoretical danger of jumping from a fence but rather an actual danger which the court found sufficient to create a hazardous condition. This is a far cry from the facts of this case.

Therefore, because neither element of the statute was supported by the objective facts, there was neither probable cause nor any reasonable view of the facts which would support a violation of PL §240.20(7).

### C.   There Was No Probable Cause For An Arrest For PL §120.20

Defendants next posit the crime of Reckless Endangerment, PL §120.20. This statute requires that the defendant: (1) engage in reckless conduct which creates a (2) substantial risk of serious physical injury to another person. The Penal Law defines "reckless" as being aware of and consciously disregarding a substantial and unjustifiable risk. PL §15.05 (3). The term "serious physical injury" has a specific and limited definition under the Penal Law: an injury which creates a substantial risk of death. PL §10.00 (10).[1] Here, there is nothing in the Complaint to suggest that Plaintiff's conduct either disregarded a substantial risk or that there existed a substantial risk of death to another person.

In their Memorandum, Defendants misstate the level of potential harm required to meet the statute. Thus, they claim that it "is clear that" anyone struck in the head by a dropped camera

---

[1] Where an injury actually occurs, the statute applies to death, serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ. PL §10 (10). There is nothing in the Complaint from which it can be inferred that the risk of such an injury existed. Thus, without an allegation as to the weight of the camera, the height at which it was held, the proximity of persons around the phone booth, the size and shape of the platform upon which Plaintiff stood, or whether Plaintiff was near the edge of the platform, there is no basis to infer that the camera was in danger of being dropped or, if dropped, created a <u>substantial</u> risk to another person of the statutorily defined injuries.

would suffer a "severe" injury. There is nothing "clear" about this proposition. If the camera was dropped it is not certain that it would hit someone at all, much less in the head. Moreover, if it did land on someone's head, it is speculative rather than "clear" that the injury would be severe. Most significantly, as shown above, where no injury has occurred, the statute covers only those instances that create a substantial risk of death. This is qualitatively different than a hypothetical "severe" injury posited by Defendants. *See People v. Beam*, 22 Misc.3d 306, 309 (Crim. Ct. N.Y. Co. 2008) (the fact that some injury may have resulted from defendant's actions was insufficient to establish reckless endangerment).

Moreover, because all reasonable inferences must be drawn in favor of Plaintiff, the inferences urged by Defendants must be rejected. Instead, the reasonable inference is that Plaintiff, seeking to obtain the best possible video of the OWS protest and arrests, would take special care to keep his balance, maintain the integrity of his equipment and not engage in conduct that would create a substantial risk of death to another person.

Finally, to the extent that Defendants premise their argument on the supposition that Plaintiff was atop "an object not designed to support a person" (Def. Mem., p. 8), there is nothing in the Complaint to support this inference. Indeed, the only reasonable and permissible inference is exactly the opposite. Given that telephone booths are placed throughout New York City and that there are numerous events (such as parades and protests) for which people will seek a better vantage point, it is reasonable to infer that the booths would be designed to accommodate the weight of one or more adults in order to avoid liability should someone climb atop the booth. Moreover, there is nothing in the Complaint from which the weight of Plaintiff can be inferred or what amount of weight the booth was designed to hold. Therefore, this entire line of argument,

premised on facts not alleged and inferences improperly drawn, must fail.

Therefore, because neither element of the statute was supported by the objective facts, there was neither probable cause nor any reasonable view of the facts which would support a violation of PL §120.20.

### D.     There Was No Probable Cause For An Arrest For PL §140.25

As a final gambit, Defendants suggest that there existed probable cause to arrest Plaintiff for a violation of PL §140.25, Reckless Endangerment of Property. This statute requires that a person recklessly engage in conduct that creates a (1) substantial risk of damage to the property of another person (2) in an amount exceeding two hundred and fifty dollars.

As discussed above, there is nothing alleged in the Complaint, nor any allegation that supports a reasonable inference, to suggest that the top of the phone booth could not support the weight of an adult male. Indeed, the only reasonable inference is the opposite. Moreover, there is nothing in the Complaint from which it can be inferred that should any damage have occurred, it would have been in an amount exceeding the statutory monetary threshold.

Therefore, because neither element of the statute was supported by the objective facts, there was neither probable cause nor any reasonable view of the facts which would support a violation of PL §140.25.

### III.    The Claim For Malicious Prosecution Is Properly Pled

As correctly stated in Defendants' Memorandum, in order to properly plead a claim for malicious prosecution, a plaintiff must allege that a criminal proceeding was commenced and maintained against him, that it was brought without probable cause and that it was terminated in his favor. *Broughton v. State*, 37 N.Y.2d 451, 457 (1975), *cert. denied*, 423 U.S. 929 (1975).

The Complaint alleges that a proceeding was commenced by the arrest and issuance of a summons (Complaint, ¶¶ 14-16); that it was commenced without probable cause (Complaint, ¶ 17 and ¶ 25); and, that the criminal action was terminated in his favor by virtue of a dismissal (Complaint, ¶ 18). These allegations sufficiently support the claim of malicious prosecution.

Defendants' assert that the allegations in the Complaint fail to rise to the level of a Fourth Amendment violation. In support of that argument, however, they rely on cases which are readily distinguishable. Both *Faruki v. City of New York*, 517 Fed. Appx. 1, 2 (2d Cir. 2013) and *Burg v. Gosselin*, 591 F.3d 95 (2d Cir. 2010), were cases deciding a motion for summary judgement brought pursuant to Rule 56, and not a motion to dismiss under Rule 12. As such, the courts in those cases had a full factual record upon which to determine the issue.

The issuance of a summons, like a desk appearance ticket, compels the appearance of the individual to the criminal court and is the initiation of the prosecution. *Cf., Stampf v. Long Island R. Co.*, 761 F.3d 192, 199 (2d Cir. 2014) (Desk Appearance Ticket sufficiently initiates prosecution to support claim for malicious prosecution). [2] Additionally, the requirement that a criminal defendant, though released on his own recognizance, must "render himself at all times to the orders and processes of the court", may be sufficient to establish a Fourth Amendment claim. *See Rohman v. New York City Transit Authority*, 215 F.3d 208, 216 (2d Cir. 2000) (citing NY Crim. Proc. Law §510.40).

As to the assertion that the existence of probable cause to arrest requires dismissal of the claim, Plaintiff respectfully directs the Court to the above arguments demonstrating that there

---

[2] Plaintiff concedes that the Complaint fails to state the date upon which he appeared in court for arraignment on the charges. Should this Court find that such allegation is essential to the claim, the proper remedy would be an amendment of the Complaint, rather than dismissal.

was no probable cause for arrest. Finally, Defendants' assertion that the Complaint fails to allege malice is misplaced. Actual malice need not be pled in a claim for malicious prosecution: "[a] lack of probable cause generally creates an inference of malice." *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir.2003) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir.1997)).

Therefore, because the elements of the claim of malicious prosecution were properly pled, or to the extent can be made sufficient by simple amendment, the motion to dismiss should be denied.

## IV. The Officer Defendants Are Not Entitled To Qualified Immunity

Initially, it must be stated that Defendants' argument on the existence of qualified immunity is premised on facts neither alleged in, nor based upon permissible inferences from, the Complaint. Thus, Defendants assert that "[w]hat he climbed on was not meant to support people, and he was filming an incident some distance away, not focused on his footing." As demonstrated above, because these are not reasonable inferences from the Complaint, they cannot support a claim of qualified immunity.

Defendants further assert that by ordering Plaintiff to come down from the booth, the officers conduct was "patently reasonable." (Def. Mem., p. 11-12). For the purpose of this argument, Plaintiff accepts that the order to come down was reasonable. However, the Defendants conduct did not end there. It is neither reasonable nor lawful to then place Plaintiff under arrest where no legitimate view of the evidence would support any criminal charge. As such, there is no basis for qualified immunity.

### V. Plaintiff Properly Pled A Claim For A First Amendment Violation

The elements of a First Amendment claim are that: Plaintiff had (1) an interest protected by the First Amendment; (2) defendants' actions were motivated by the exercise of that right; and (3) defendants' actions chilled the exercise of that right. *Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010). A review of the allegations of the Complaint, and the reasonable and permissible inferences to be drawn from those allegations, demonstrates that the claim is sufficiently pled.

The first element is satisfied by the allegation that Plaintiff was, at the time of his arrest, working at a journalist for TV New Zealand (Complaint, ¶ 9). The second element is satisfied by the allegation and reasonable inference that because Plaintiff was taping from a better angle, he could therefore get appreciably better video of the arrest activity that resulted in a significant injury to a protestor (Complaint, ¶¶ 10-11), something that the police would prefer not be taped. The third element is satisfied by the allegation that because Plaintiff was arrested and handcuffed, he could not continue his activity as a journalist (Complaint, ¶¶ 14-15).

As to the arguments on probable cause and qualified immunity, the Court is respectfully directed to the arguments above.

### VI. Plaintiff Properly Pled A Claim For Excessive Force

The Complaint alleges that Plaintiff was handcuffed for three hours because the plastic handcuffs could not be properly removed; as a result, he suffered bruising and pain (Complaint, ¶¶ 14-15). The question of whether the injury sustained is sufficient to support a constitutional violation is factual. As such, the motion to dismiss is premature. In any event, the permissible inference from the facts is that because the police were unable to remove the handcuffs in a timely fashion, and had to resort to using a bread knife to remove them, the extended time in

handcuffs constituted excessive force.

Oddly, cases cited by Defendants support the positions that the motion is premature or without merit. Thus, *Schy v. Vermont*, 2 Fed. Appx. 101 (2d Cir. 2001) and *Wilder v. City of Amityville*, 288 F. Supp. 2d 341 (E.D.N.Y. 2003), were both decided on a motion for summary judgment after discovery; *Romano v. Howarth*, 998 F.2d 101 (2d Cir. 1993) concerned a post-trial motion. A case decided on a motion to dismiss relied upon by Defendants, is factually distinguishable. In *Roundtree v. New York*, 778 F. Supp. 614 (E.D.N.Y. 1991), the plaintiff alleged no physical injury at all, instead claiming "emotional pain and suffering" from the physical contact with the police. The court focused its decision to dismiss on the failure to allege even the slightest physical pain, holding that to do otherwise would convert the claim for excessive force into the tort of battery. *Id.* at 622 - 623. Finally, in *Nogbou v. Mayrose*, 2009 WL 3334805, *6 (S.D.N.Y. 2009), the facts demonstrated that the plaintiff was apparently handcuffed for approximately five minutes. Such a *de minimus* time in handcuffs cannot be compared to the three hours endured by Plaintiff.

Defendants' further assertion that the claim for assault should also be dismissed (Def. Mem., p. 14, fn. 1) has no merit. This can be seen from one of the cases cited by Defendants. In *Graham v. City of New York*, 928 F. Supp.2d 610 (E.D.N.Y. 2013), the court specifically stated that "under New York law '[i]f an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest.' " *Id.* at 624, citing *5 Borough Pawn, LLC. v. Marti*, 753 F. Supp.2d 186, 201 (S.D.N.Y.2010) and *Sulkowska v. City of New York*, 129 F. Supp.2d 274, 294 (S.D.N.Y.2001). The assault claim here is premised on just this theory.

Finally, as to that portion of the argument that relies on the existence of probable cause to arrest and qualified immunity, the Court is respectfully directed to the arguments above.

## VII. Plaintiff Properly Pled A Claim For Municipal Liability

Plaintiff alleges that his arrest and prosecution was a direct result of a policy and practice of Defendant City to impede the work of journalists covering the OWS protests. In order to establish municipal liability, the policy at issue need not be an explicitly stated rule or regulation, but can be shown by circumstantial evidence. *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989). Because Defendant City intentionally interfered with the First Amendment rights of the press to cover these events, it established a policy or custom for which the municipal defendant can be held liable. *See e.g., Myers v. County of Orange*, 157 F.3d 66, 77 (2d Cir. 1998); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993); *Walker v. City of New York*, 974 F.2d 293, 301, *cert. denied*, 507 U.S. 961 and 507 U.S. 972 (1993).

The Complaint alleges that during the course of the OWS protests, Defendant City, through the NYPD, had a policy and practice of making mass false arrests and utilizing excessive force as a means of discouraging the protests (Complaint, ¶ 38). In conjunction with this policy, the Complaint alleges that Defendant City maintained a policy and practice of arresting journalists who were recording the illegal and unconstitutional acts, resulting in the arrest of 44 journalists over 15 protest dates (Complaint, ¶ 39). The existence of a policy to impede the coverage by journalists of the protest date on which Plaintiff was arrested was acknowledged by then Mayor Bloomberg (Complaint, ¶ 41). This policy and practice is alleged to have been the direct cause of Plaintiff's arrest and prosecution (Complaint, ¶ 43). These allegations sufficiently make out a claim of municipal liability under *Monell v. Department of Social Services of the City*

*of New York*, 436 U.S. 658 (1978) and its progeny.

Initially, Defendants' wrongly assert that "Plaintiff presents two competing theories" in bringing a *Monell* claim. The allegation in the Complaint of OWS mass arrests without probable cause and with excessive force is not included as a cause of Plaintiff's arrest. Rather, it is the predicate conduct for why Defendant City would seek to impede journalistic coverage of the events, including arrests of working journalists. Thus, the reasonable inference form the Complaint is that because Defendant City was concerned that mass media coverage of its conduct would reveal and document its unconstitutional acts, it instituted a policy and practice to impede such coverage, including arrest and prosecution.

Next, Defendants try to avoid liability by a tortured reading of the allegations pertaining to the conduct of then Mayor Bloomberg and then Police Commissioner Kelly (Complaint, ¶¶ 41 and 42). Thus, Defendants assert that the declaration by Mayor Bloomberg of a policy to impede First Amendment activity is actually inconsistent with the existence of such a policy (Def. Mem., p. 18). Given the number of arrests of credentialed journalists covering the protests, it strains belief that the Mayor's policy goal was to protect the press. Instead, the obvious inference from the allegations of the Complaint is that the Mayor was trying to put an acceptable gloss on an unlawful policy (Complaint, ¶ 41, footnote 1). Similarly, the action by Commissioner Kelly demonstrates a recognition by Defendant City that the interference with and arrests of journalists had become such a pervasive practice that explicit action was needed to terminate it.

Finally, Defendants attack a straw-man by asserting that the scope of the alleged policy demonstrates its implausibility. Contrary to their assertion, Plaintiff does not allege that the policy was directed at "individuals recording police activity" with cellphone cameras. (Def.

Mem., p. 19). Instead, the clear implication and inference of the Complaint is that the policy was directed against working professional journalists to prevent or impede mass media coverage of the protests. Moreover, it is reasonable to infer that Plaintiff was targeted here explicitly because he had a superior filming position. The allegation is thus narrowly pled and specifically drawn to cover the false arrest and malicious prosecution of Plaintiff.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in all respects. Alternatively, Plaintiff should be allowed to amend the Complaint to cure any deficiencies in pleading.

Dated: New York, New York
       March 16, 2015

                                                      Jay K. Goldberg [JG-1294]
                                                      Attorney for Plaintiff
                                                      49 W. 37th Street, 7th Floor
                                                      New York, New York 10018
                                                      212-766-3366