JAY K. GOLDBERG [JG-1294]
GOLDBERG & ALLEN, LLP
49 West 37th Street, 7th Floor
New York, New York  10018
212-766-3366

**UNITED STATES DISTRICT COURT**                    **14 CV8549 (PKC)**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------------------X    **FIRST**
DOUGLAS J. HIGGINBOTHAM,                                **AMENDED**
                                        Plaintiff,            **COMPLAINT**

                        - against -                          **PLAINTIFF**
                                                            **DEMANDS A**
                                                            **TRIAL BY JURY**

CITY OF NEW YORK, POLICE OFFICER CURTIS
SYLVESTER, SHIELD 5060,  POLICE SERGEANT
CHRISTOPHE TOMLINSON, SHIELD 3686,
DEPUTY INSPECTOR THOMAS TAFFE,

                                        Defendants.
--------------------------------------------------------------------------------X

## PARTIES, JURISDICTION and VENUE

1.     Plaintiff, DOUGLAS J. HIGGINBOTHAM, is a 40 year old male, who, at all

times relevant to this action, was a resident of New York and a citizen of the United

States.

2.     Defendant, City of New York ("NYC"), is a municipality within the State of

New York, which includes New York County.  NYC maintains a police department, the

New York City Police Department ("NYPD"), which is an agency of the municipality.

3.     Upon information and belief, Defendant POLICE OFFICER CURTIS

SYLVESTER, SHIELD 5060, was at all relevant times an officer with the NYPD

assigned to the Queens North Task Force.  All actions by SYLVESTER complained of

herein were taken in the course of his employment and under color of law.

SYLVESTER is being sued in both his individual and official capacities.

4.     Upon information and belief, Defendant POLICE SERGEANT

CHRISTOPHE TOMLINSON, SHIELD 3686, was at all relevant times a uniformed

officer with the NYPD assigned to the Queens North Task Force.  All actions by

TOMLINSON complained of herein were taken in the course of his employment and

under color of law.  TOMLINSON is being sued in both his individual and official

capacities.

5.     Upon information and belief, Defendant DEPUTY INSPECTOR THOMAS

TAFFE, was at all relevant times a uniformed officer with the NYPD acting in a

supervisory capacity.  All actions by Defendant TAFFE complained of herein were taken

in the course of his employment and under color of law.  Defendant TAFFE is being

sued in both his individual and official capacities.

6.     Original jurisdiction of this Court is founded upon 28 U.S.C. §1331, et

seq., specifically 28 U.S.C. § 1343.

7.     Venue is properly laid in this District pursuant to 28 U.S.C. §1391(b).

8.     The instant action is commenced within three years of the date of accrual

of all causes of action.

**FACTS GIVING RISE TO THE CLAIMS**

9.     On November 15, 2011, at approximately 10:45 a.m., Plaintiff was

working as a free-lance video-journalist for TV New Zealand covering an Occupy Wall

Street ("OWS") demonstration in lower Manhattan, specifically, the aftermath of the

eviction of Zuccotti Park.

10.     During the course of the coverage, Plaintiff, whose press credentials were clearly visible around a chain on his neck, climbed atop a telephone booth in order to get a better angle for taking the video.

11.     While Plaintiff was taping the OWS protest, specifically an arrest that resulted in a significant injury to the person being arrested, Defendant TAFFE ordered Plaintiff to climb down from the telephone booth.

12.     Plaintiff was unable to immediately comply with that order because there were many people surrounding the booth.

13.     As Plaintiff began to climb down, Defendants TAFFE, SYLVESTER and TOMLINSON began to pull his legs out from under him, causing Plaintiff to drop his camera and tumble to the ground.

14.     Plaintiff was placed in plastic flexible handcuffs and walked from the scene by Defendants SYLVESTER and TOMLINSON.

15.     Plaintiff was placed in a van and transported to an OWS processing center at the 1st Precinct where officers had to use a bread-knife to cut off the handcuffs. As a result, Plaintiff spent approximately three hours in handcuffs resulting in bruising and pain to his wrists.

16.     Plaintiff was issued a Summons to appear in court by Defendant SYLVESTER and released after approximately four hours in custody.

17.     Plaintiff was charged with a single count of Disorderly Conduct based upon the false allegation that, with the intent to cause public inconvenience, annoyance or alarm, or recklessly causing a risk thereof, he congregated with other persons in a

public place and refused to comply with a lawful order of the police to disperse.

18.     All charges against Plaintiff were dismissed on February 17, 2012.

19.     As a result of the arrest, Plaintiff suffered damage to his personal property, specifically the video camera.

20.     In addition, because the arrest resulted in international press coverage, Plaintiff lost significant income as various news outlets informed him that his services as a cameraman were no longer needed.

**FIRST CLAIM**
(§1983 - FALSE ARREST)

21.     Pursuant to Rule 10(c), Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 20 of the Complaint as if incorporated and reiterated herein.

22.     By arresting Plaintiff without legal authority, Defendants SYLVESTER, TOMLINSON and TAFFE, individually and acting together, violated Plaintiff's rights under the First, Fourth, Eighth and Fourteenth Amendments of the United States Constitution.

23.     By reason thereof, Defendants SYLVESTER, TOMLINSON and TAFFE, violated 42 U.S.C. §1983 and caused Plaintiff to suffer physical injuries, emotional distress, mental anguish, economic damages and the loss of his constitutional rights.

**SECOND CLAIM**
(§1983 - FIRST AMENDMENT)

24.     Pursuant to Rule 10(c), Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 23 of the Complaint as if incorporated and reiterated herein.

25.     By their conduct, SYLVESTER, TOMLINSON and TAFFE, caused damage to Plaintiff's camera and otherwise prevented him from continuing to videotape the OWS protest and police response.

26.     As such, and while acting under color of law, SYLVESTER, TOMLINSON and TAFFE, intentionally interfered with and prevented Plaintiff from exercising his rights under the First and Fourteenth Amendments of the United States Constitution.

27.     By reason thereof, Defendants SYLVESTER, TOMLINSON and TAFFE violated 42 U.S.C. §1983 and caused Plaintiff to suffer physical injuries, emotional distress, mental anguish and the loss of his constitutional rights.

### THIRD CLAIM
(MONELL CLAIM)

28.     Pursuant to Rule 10(c), Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 27 of the Complaint as if incorporated and reiterated herein.

**29.**     In response to the OWS demonstrations, and pursuant to a court order, NYC and the NYPD decided to evict OWS protestors from Zuccotti Park, where they had been camping out for approximately two months.

30.     To effectuate this police action with the minimal amount of press coverage, the NYPD began the operation at midnight on November 15, 2011.

31.     During the course of the eviction operation, and through the next morning when OWS protestors sought to re-enter the park, the NYPD took actions to impede journalists access to the immediate area by: limiting reporters to a designated "press

pen;" using physical force against reporters; and, arresting ten journalists, including Plaintiff, on false allegations of disorderly conduct or trespassing.

32.     Among those arrested while engaging or attempting to engage in protected First Amendment news coverage, were reporters from the New York Daily News, the Associated Press, National Public Radio, Vanity Fair, DNAInfo and other news outlets. [1]

33.     Upon information and belief, the arrests against all of these journalists were either voided without formal charges or eventually dismissed in court.

34.     Then Mayor Michael Bloomberg stated that the limitations placed on the media to prevent coverage of the November 15, 2011 raid on Zuccotti Park were intentionally designed to "prevent the situation from getting worse" and to protect members of the press. Thus, it is beyond dispute that the actions of that date were a policy and practice of Defendant NYC.[2]

35.     The media outrage to the intentional interference with reporters, including the unjustified arrests of journalists doing their job, became so pervasive that on November 23, 2011, then Commissioner Raymond Kelly was compelled to issue a memorandum to be read to all police officers not to unreasonably interfere with journalists' access to news events.

_____

[1] See Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy Wall Street, pp. 84-86 (2012),The Global Justice Clinic (NYU School of Law) and the Walter Leitner International Human Rights Clinic at the Leitner Center for International Law and Justice (Fordham Law School), at http://goo.gl/Xw0jcS.

[2] This rationale was widely rejected and, indeed, ridiculed by Congressman Jerrold Nadler who, by letter of December 6, 2011, formally requested a Department of Justice investigation into the NYPD actions.

36.     These acts by members of the NYPD constituted an intentional violation of the Plaintiff's First Amendment rights under the United States Constitution and were the direct cause of his false arrest, malicious prosecution and injury.

37.     By reason thereof, Defendant NYC has violated 42 U.S.C. §1983 and caused Plaintiff to suffer physical injuries, emotional distress, mental anguish and the loss of his constitutional rights.

### DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

**WHEREFORE**, the Plaintiff demands judgment against Defendants as follows:

i)      On the first claim, actual and punitive damages in an amount to be determined at trial;

ii)     On the second claim, actual and punitive damages in an amount to be determined at trial;

iii)    On the third claim, actual and punitive damages in an amount to be determined at trial;

iv)     Statutory attorney's fees and disbursements pursuant to 42 U.S.C. §1988, and costs of this action; and

v)      Such other relief as the Court deems just and proper.

Dated:     New York, New York
           June 22, 2015

                                Goldberg & Allen, LLP
                                Attorneys for Plaintiff

                                *Jay K. Goldberg*/s/s

                        By:     _____
                                Jay K. Goldberg [JG-1294]
                                49 West 37th Street, 7th Floor
                                New York, New York 10018
                                (212) 766-3366