UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DOUGLAS HIGGINBOTHAM,

                    Plaintiff,                          14-cv-8549 (PKC)

    -against-                               MEMORANDUM
                                                      AND ORDER

POLICE OFFICER CURTIS SYLVESTER,
POLICE SERGEANT CHRISTOPHER
TOMLINSON, and POLICE CAPTAIN TAFFE,

                    Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Douglas Higginbotham, who stands 5'9" and was carrying a thirty-pound camera, climbed atop an open air-phone booth that, itself, was seven feet high. Tightly crowded around the phone booth were people who came to Zuccotti Park in Manhattan to participate in or observe an Occupy Wall Street protest on November 15, 2011. Higginbotham's intent was to photograph the scene, including the interaction of the police with those present. This action arises out of the arrest of Higginbotham in connection with the foregoing conduct.

        The defendants Officer Curtis Sylvester, Sergeant Christopher Tomlinson, and Captain Thomas Taffee, who are members of the New York Police Department ("NYPD"), now move for summary judgment on Higginbotham's false arrest and First Amendment retaliation claims. (Dkt. No. 56.) For the following reasons, defendants' motion is GRANTED.

Procedural History

        Higginbotham brought various claims pursuant to 42 U.S.C. § 1983 and New York state law. (Dkt. No. 1.) On May 12, 2015, this Court dismissed his claims for malicious prosecution, excessive force, assault, and municipal liability, but denied dismissal as to his false

arrest and First Amendment retaliation claims. (Dkt. No. 21.) Higginbotham filed an amended complaint, reasserting a municipal liability claim against the City of New York, as well as his false arrest and First Amendment retaliation claims. (Dkt. No. 29.) On September 18, 2015, the parties entered into a stipulation and order of partial dismissal, dismissing Higginbotham's municipal liability claim. (Dkt. No. 43.) The remaining defendants are Officer Sylvester, Sergeant Tomlinson, and Captain Taffee. Pretrial discovery in this action is now closed.

FACTS

The facts are largely undisputed. Higginbotham, a self-employed cameraman at the time, arrived at Zuccotti Park on November 15, 2011 at approximately 10:00 a.m. to cover the Occupy Wall Street protest. (Pl.'s Rule 56.1 Counterstatement ¶¶ 2-3; Defs.' Rule 56.1 Counterstatement ¶ 40.)[1] He had his camera and sound equipment with him, which weighed approximately 30 pounds. (Pl.'s Rule 56.1 Counterstatement ¶¶ 5-7.) The camera, which Higginbotham would balance on his shoulder, was also strapped to his hand. (Id. ¶ 8.)

To gain a better vantage point for purposes of filming the protesting crowd, Higginbotham twice climbed atop a phone booth at the edge of Zuccotti Park. (Pl.'s Rule 56.1 Counterstatement ¶ 14; Defs.' Rule 56.1 Counterstatement ¶ 41.) The phone booth in question was a structure approximately 7' 4" tall. (Pl.'s Rule 56.1 Counterstatement ¶ 9.) It had a curved roof that measured 6'8" in length, 3'4" in width, and between 3 3/8" and 5 3/8" in thickness. (Pl.'s Rule 56.1 Counterstatement ¶ 10; Defs.' Rule 56.1 Counterstatement ¶ 44.) Standing at 5'9" and weighing approximately 140 pounds, Higginbotham was only able to get on top of the phone booth with his camera by first climbing on top of police barricades. (Pl.'s Rule 56.1

[1] Unless otherwise noted, citations to (Pl.'s Rule 56.1 Counterstatement ¶ __) refer to undisputed facts submitted by plaintiff in response to Defendant's Local Rule 56.1 Statement, and citations to (Defs.' Rule 56.1 Counterstatement ¶ __) refer to undisputed facts submitted by defendants in response to Plaintiff's Local Rule 56.1 Statement.

Counterstatement ¶¶ 1, 11.)  The first time that Higginbotham climbed to the top of the phone booth in question, he did so without police interference.  (Id. ¶¶ 14, 16.)  There was already a crowd of people, "tightly packed," surrounding the phone booth.  (Id. ¶¶ 12-13.)  He remained atop the phone booth for approximately five minutes, at which point he climbed down with the help of Tim Wilson, the reporter with whom he was working.  (Id. ¶ 15.)

Shortly thereafter, Higginbotham climbed to the top of the phone booth again.  The "crowd was still densely packed around the phone booth."  (Id. ¶ 20.)  It was at that point that Higginbotham was first ordered to get down by both Officer Sylvester and an unidentified Community Affairs officer.  (Pl.'s Rule 56.1 Counterstatement ¶ 21; Defs.' Rule 56.1 Counterstatement ¶ 48.)  However, Higginbotham did not respond and instead, "turned his camera back towards the crowd."  (Pl.'s Rule 56.1 Counterstatement ¶ 25; Defs.' Rule 56.1 Counterstatement ¶ 51.)  Approximately 30 seconds later, Captain Taffe ordered Higginbotham to get down from the phone booth "at least five times."  (Pl.'s Rule 56.1 Counterstatement ¶ 27.)  Higginbotham began to descend from the phone booth approximately five seconds after being ordered to do so by Captain Taffe.  (Defs.' Rule 56.1 Counterstatement ¶ 54.)  While defendants contend that officers helped Higginbotham down from the phone booth, Higginbotham argues that he was forcibly removed.  (Defs.' Rule 56.1 Statement ¶¶ 29-31; Pl.'s Rule 56.1 Statement ¶ 56.)

Once at ground level, Captain Taffe instructed Officer Sylvester to arrest Higginbotham.  (Defs.' Rule 56.1 Counterstatement ¶ 57.)  Neither Captain Taffe nor Sergeant Tomlinson, both "superior officers," "recall instructing [Officer] Sylvester on how to charge [Higginbotham]."  (Id. ¶ 58.)  Higginbotham was then transported to a police precinct for

processing, where he was issued a criminal summons for disorderly conduct and released from custody. (Id. ¶¶ 59, 61-62.)

LEGAL STANDARD

On a motion for summary judgment, the Court views all evidence of record in the light most favorable to Higginbotham as the non-moving party, and draws all reasonable inferences in his favor. See generally Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011).

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law," meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986). It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief as a matter of law. Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)). In reviewing a motion for summary judgment, the court may scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c)(3), Fed. R. Civ. P. In the absence of any disputed material fact, summary judgment is appropriate. Rule 56(a), Fed. R. Civ. P.

DISCUSSION

I. False Arrest Claim

A claim for false arrest under section 1983 "is substantially the same as a claim for false arrest under New York law." Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007). An officer can avoid liability by demonstrating "that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity." Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "A finding of probable cause is a complete defense to false arrest claims." Id. (citing Jenkins, 478 F.3d at 84). Probable cause exists when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852. "When determining whether probable cause existed to support an arrest, we 'consider those facts available to the officer at the time of arrest and immediately before it,' and we must render our decision based on the 'totality of the circumstances.'" Simpson, 793 F.3d at 265 (quoting Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006)).

Defendants renew their arguments made at the motion to dismiss stage, contending that probable cause existed to arrest Higginbotham under New York Penal Law §§ 120.20, 240.20(7), and 145.25. The Court denied defendants' motion to dismiss Higginbotham's false arrest claim, stating that "the Court is not prepared to hold that sufficient facts are alleged in the complaint to establish probable cause as a matter of law." Higginbotham v. City of New York, 105 F. Supp. 3d 369, 374 (S.D.N.Y. 2015). Specifically, the Court noted:

> The complaint says nothing about Higginbotham's size, about the size and weight of his camera and whether it was secured to his person, about the height of the phone booth and its suitability as a

> platform for a male adult, or about how tightly packed the crowd around the phone booth was at the time Higginbotham climbed onto it. Because, at the pleading stage, Higginbotham is entitled to all reasonable inferences from the facts alleged in the complaint, the Court must assume that those variables were such that Higginbotham was not creating a hazardous condition.

Id.  All fact discovery has been completed and the determination of whether probable cause existed is ripe for determination.  Weyant, 101 F.3d at 852.  The summary judgment record includes the size of Higginbotham and his camera, the dimensions of the phone booth, and a visual depiction of the crowd surrounding the phone booth.  The Court concludes that probable cause existed to arrest Higginbotham pursuant to New York Penal Law §§ 120.20.

A person is guilty of reckless endangerment in the second degree pursuant to New York Penal Law § 120.20 "when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person."  A person acts recklessly with respect to a result "when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur . . . ."  N.Y. Penal Law § 15.05(3).  The risk must "constitute[] a gross deviation from the standard of conduct that a reasonable person would observe in the situation." Id.

The undisputed facts support the conclusion that a person of reasonable caution would believe that Higginbotham acted recklessly in creating a substantial risk of serious physical injury to another person.  For probable cause to exist to arrest pursuant to New York Penal Law § 120.20, there need not be proof of actual serious physical injury to another person, only the substantial risk of such injury, recklessly created.  Green v. City of Yonkers, No. 10 cv 3653 (JFK), 2012 WL 554453, at *4 (S.D.N.Y. Feb. 21, 2012) ("Under New York law, the crime[] of reckless endangerment . . . do[es] not contemplate . . . injury as a condition precedent."); People v. Davis, 72 N.Y.2d 32, 36 (1988) ("[R]eckless endangerment is not an

intent crime. Instead, determining whether the crime was committed entails an objective assessment of the degree of risk presented by defendant's reckless conduct.") (internal quotations omitted); cf. People v. Todaro, 26 N.Y.2d 325, 328 (1970) (holding that New York Penal Law § 240.20 "does not require proof of the accomplished fact of public inconvenience, annoyance or alarm; but proof only from which the *risk* of it, recklessly created, might be inferred.") (emphasis in original). "Moreover, because 'the practical restraints on police in the field are greater with respect to ascertaining intent . . . , the latitude accorded to officers considering the probable cause issue in the context of mens rea crimes must be correspondingly great.'" Zalaski v. City of Hartford, 723 F.3d 382, 393 (2d Cir. 2013) (quoting Cox v. Hainey, 391 F.3d 25, 34 (1st Cir. 2004)).

    The undisputed facts surrounding Higginbotham's ascent of the phone booth demonstrate that a person of reasonable caution would infer that Higginbotham acted recklessly in creating a substantial risk of serious physical injury to another person. It can reasonably be inferred that Higginbotham was aware of the risk of climbing atop the phone booth based on the fact that he was only able to do so by first climbing on top of police barricades. (Pl.'s Rule 56.1 Counterstatement ¶ 11.) Higginbotham was also aware of the large crowd that was tightly packed around the phone booth in question when he climbed to the top of it. (Pl.'s Rule 56.1 Counterstatement ¶¶ 12-13.) Indeed, the video recording and pictures of Higginbotham atop the phone booth show that protestors and other camerapersons stood directly below Higginbotham while he filmed from above. (Lucas Decl. Ex. J-K.) Nevertheless, Higginbotham climbed more than seven feet above the tightly-packed crowd and filmed the protest, all while balancing a 30-pound camera on his shoulder. (Pl.'s Rule 56.1 Counterstatement ¶¶ 7-9, 20.) And because Higginbotham had climbed atop of the phone booth once before, he knew that the roof was not

flat, but curved. (Pl.'s Rule 56.1 Counterstatement ¶¶ 10, 14.) Based on Higginbotham's position above the crowd atop a phone booth with a curved roof, probable cause existed for a reasonable person to believe that Higginbotham consciously disregarded the risk of losing his balance and falling or dropping his camera from more than seven feet in the air.

    Higginbotham contends that there was no probable cause arrest him, because "if the roof were both sturdy enough and large enough for [Higginbotham] to stand safely and video the scene below, there could be no 'substantial risk' of falling off the platform." (Pl.'s Opp'n 5.) Higginbotham contends that that phone booth's roof was the size of "a standard six foot office desk," was sturdily constructed, and was rated to hold 500 pounds. (Pl.'s Opp'n 5-7.) But Higginbotham's argument misconstrues the probable cause inquiry. Whether probable cause existed depends on "those facts available to the officer at the time of arrest and immediately before it." Simpson, 793 F.3d at 265 (internal quotations omitted). Neither party contends that the defendants knew how the roof was constructed or whether it was rated to hold 500 pounds. Accepting Higginbotham's facts as true—that the roof was 3 3/8" to 5 3/8" thick and could withstand 500 pounds (Defs.' Rule 56.1 Counterstatement ¶¶ 44-45)—summary judgment would still be appropriate.

    Reviewing the video and photographs submitted on this motion, it is incontrovertible that an officer observing the scene would have seen that Higginbotham towered more than seven feet above protestors and other camerapersons while balancing a large camera on his shoulder. (Lucas Decl. Ex. J-K.) Higginbotham's recklessness can be inferred from the fact that he himself knew that he was high above the densely-packed crowd, standing on a curved platform, a fact that was also visible to the officers at the scene. Therefore, even if the phone booth's roof was the size of a standard office desk, the curvature of the platform, its sheer

height, and a common sense understanding of how the law of gravity would apply to Higginbotham and his television equipment is sufficient for a person of reasonable caution to believe that Higginbotham acted recklessly in creating a substantial risk of serious physical injury to another person.

        Higginbotham's remaining arguments are also unpersuasive. Higginbotham contends that he "was accustomed to filming from heights and would not have climbed onto the booth if it presented a danger to himself or his $45,000 of equipment." (Pl.'s Opp'n 7.) Higginbotham's own perception of the risk he created is immaterial to the probable cause inquiry. Davis, 72 N.Y.2d at 36 (observing that a party's "subjective intent is irrelevant" in determining fault for reckless endangerment). The appropriate inquiry, as stated above, "is limited to 'whether the facts known by the arresting officer at the time of arrest objectively provided probable cause to arrest.'" Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013) (quoting Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006)). Higginbotham does not contend, nor can it be reasonably inferred, that the defendants knew of Higginbotham's confidence in filming from heights, and therefore, it should not be considered in determining whether probable cause existed. See Zaniewska v. City of New York, 569 Fed. App'x 39, 40 (2d Cir. 2014) (affirming summary judgment, where there was no dispute as to what the arresting officers' knew, even where disputed issues remained as to plaintiff's knowledge). Higginbotham's argument that he has previously climbed atop similar phone booths in the past, including once with the assistance of police officers to film crowds celebrating the death of Osama Bin Laden (Defs.' Rule 56.1 Counterstatement ¶¶ 67-69), is similarly unavailing. Higginbotham does not contend, nor can it be reasonably inferred, that the defendants in the present case were aware of Higginbotham's past activities in filming from atop phone booths.

Rodriguez v. City of New York, No. 08 cv 04173 (RRM) (RLM), 2012 WL 1059415, at *7 (E.D.N.Y. Mar. 28, 2012) (observing that facts unknown to officers at the time of arrest are irrelevant to the probable cause inquiry) (citing Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997)).

Finally, Higginbotham contends that even if probable cause existed to conclude that he was reckless, there is a genuine issue of material fact as to whether probable cause existed to conclude that his recklessness created a substantial risk of *serious physical injury* to another person. (Pl.'s Opp'n 7-8.) The Court disagrees. "Serious physical injury" is defined to mean "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." N.Y. Penal Law § 10.00(10). Courts have found that a bite wound to the hand requiring emergency medical treatment, a facial laceration requiring 30 stiches that leaves a permanent scar, and facial burn marks caused by hot oil that leaves a permanent scar, among other things, could constitute serious physical injuries. See Wallace v. City of Albany, 283 A.D.2d 872, 873 (3d Dep't 2001); McCall v. Rivera, 965 F. Supp. 2d 311, 333 (S.D.N.Y. 2013); Vasquez v. Granham, No. 07 cv 7575 (DLC), 2008 WL 4500702, at *4 (S.D.N.Y. Oct. 7, 2008). And as noted above, probable cause does not require actual injury, but only a substantial risk of such injury. As described above, Higginbotham stood above a tightly-packed crowd, 7'4" high in the air. His camera, on his shoulder, was more than thirteen feet in the air. Based on these facts, a person of reasonable caution would conclude that had either Higginbotham or his camera fell from that height, there was a substantial risk of protracted

disfigurement, protracted impairment of health, or protracted loss or impairment of the function of a bodily organ.[2]

Because the Court concludes that there was probable cause for Higginbotham's arrest, "a fortiori, [defendants] would be entitled to qualified immunity on this claim." Marcavage, 689 F.3d at 110 n.7. However, even if probable cause was lacking, defendants would nevertheless be entitled to qualified immunity. Officers are entitled to qualified immunity for false arrest claims if they can establish that they had "'arguable probable cause' to arrest the plaintiff." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (quoting Zalaski, 723 F.3d at 390). "'Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Zalaski, 723 F.3d at 390 (quoting Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)).

Here, the evidence is sufficient to support a finding of arguable probable cause to arrest Higginbotham pursuant to New York Penal Law § 120.20. That is to say, it was objectively reasonable for the arresting officers to believe that probable cause existed, or at the very least, for officers of reasonable competence to disagree on whether probable cause existed. As noted above, Higginbotham climbed more than seven feet above the ground atop a phone booth with a curved roof, while balancing a large camera on his shoulder. (Pl.'s Rule 56.1 Counterstatement ¶¶ 7-9, 20.) Regardless of Higginbotham's own perceptions of the risk or the structural makeup of the phone booth's roof, the facts known to the arresting officer at the time are sufficient to establish that it was objectively reasonable to conclude that probable cause

[2] The Court need not determine whether probable cause existed to arrest Higginbotham pursuant to New York Penal Law §§ 145.25, 240.20(7). Marcavage v. City of New York, 689 F.3d 98, 109–10 (2d Cir. 2012) ("Defendants prevail if there was probable cause to arrest Plaintiffs for any single offense.").

existed to arrest the plaintiff for reckless endangerment in the second degree.  Garcia, 779 F.3d at 92 ("'In deciding whether an officer's conduct was objectively reasonable . . . , we look to the information possessed by the officer at the time of the arrest, but we do not consider the subjective intent, motives, or beliefs of the officer.'" (quoting Amore v. Novarro, 624 F.3d 522, 536 (2d Cir.2010)).

Accordingly, defendants are entitled to summary judgment on the false arrest claim.

II.  First Amendment Retaliation Claim

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury."  Dorsett v. Cty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013).  The existence of probable cause, however, will defeat a First Amendment claim "premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive . . . ."  Fabrikant v. French, 691 F.3d 193, 215 (2d Cir. 2012).  Here, defendants are entitled to summary judgment as to the First Amendment retaliation claim based on the Court's conclusion that probable cause existed to arrest Higginbotham.

Higginbotham argues that his First Amendment retaliation claim could survive despite a finding of probable cause, because "the arrest was premised solely on the fact that the police wanted to prevent his taping of the escalating nature of the police interaction with the protestors."  (Pl.'s Opp'n 12.)  Put another way, Higginbotham suggests that in the face of a probable cause finding, liability for a First Amendment retaliation claim can still arise where an arrest is solely premised on the exercise of the plaintiff's First Amendment right.  Higginbotham's argument appears to be directly contradicted by Second Circuit precedent,

which states that "[a]n individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government." Mozzochi v. Borden, 959 F.2d 1174, 1180 (2d Cir. 1992). Moreover, both the video and picture evidence demonstrate that there were dozens of camerapersons recording the police interactions with protestors at the very moment that Higginbotham was doing so. (Lucas Decl. Ex. J-K.) On these facts, no reasonable jury could conclude that defendant officers targeted Higginbotham, and no other cameraperson, for exercising his First Amendment rights. Marcavage, 689 F.3d at 110 ("Although on summary judgment the evidence must be viewed in the light most favorable to Plaintiffs as the non-moving parties, when there is reliable objective evidence—such as a recording—the evidence may speak for itself."). No reasonable juror could conclude that the reason that police officers arrested Higginbotham was to suppress his First Amendment rights.

Accordingly, defendants' motion for summary judgment on the basis of their affirmative defense is granted and Higginbotham's First Amendment retaliation claim is dismissed.

CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Dkt. No. 56) is GRANTED. The Clerk is directed to terminate the motion and close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
November 2, 2016